UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ASIS INTERNATIONAL, INC., Plaintiff, vs. BOARD OF EXECUTIVE PROTECTION PROFESSIONALS, INC., Defendant. | Case No. 2:25-cv-00287-RFB-MDC<br>Las Vegas, Nevada<br>September 8, 2025<br>MOTION HEARING<br>***C E R T I F I E D C O P Y*** |

TRANSCRIPT OF PROCEEDINGS

THE HONORABLE MAXIMILIANO D. COUVILLIER,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES: See Next Page

DIGITALLY RECORDED: Liberty Court Recorder
9:06 a.m.

TRANSCRIBED BY: PATRICIA L. GANCI
(702) 385-0670

Proceedings recorded by electronic sound recording, transcript produced by mechanical stenography and computer.

APPEARANCES:

For the Plaintiff:

**ERIN M. GETTEL, ESQ.**
SNELL & WILMER, LLP
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, Nevada 89169
(702) 784-5329

and

**SARTOUK MOUSSAVI, ESQ.**
THOMPSON COBURN, LLP
55 East Monroe, 37th Floor
Chicago, Illinois 60603
(312) 346-7500

For the Defendant:

**MATTHEW J. MCKISSICK, ESQ.**
BROWNSTEIN HYATT FARBER SCHRECK
100 N. City Parkway, Suite 1600
Las Vegas, Nevada 89106
(702) 464-7054

LAS VEGAS, NEVADA; MONDAY, SEPTEMBER 8, 2025; 9:06 A.M.

--oOo--

P R O C E E D I N G S

COURTROOM ADMINISTRATOR: This is the time set for a motion hearing in Case Number 2:25-cv-287-RFB-MDC, ASIS International, Inc. versus Board of Executive Protection Professionals, Inc. Counsel, please enter your appearance for the record, beginning with the plaintiff.

MS. GETTEL: Good morning, Your Honor. Erin Gettel for plaintiff.

THE COURT: Good morning, Ms. Gettel.

MR. MOUSSAVI: Good morning, Your Honor. Sartouk Moussavi for plaintiff.

THE COURT: Good morning, Mr. Moussavi.

MR. MCKISSICK: Good morning, Your Honor. Matt McKissick for the defendant.

THE COURT: Good morning, Mr. McKissick. And thank you, Mr. Cameron, for being here. Good morning.

MR. CAMERON: Thank you, Your Honor.

THE COURT: All right. So, Mr. McKissick, I'll start with you and the defendants. Help me understand your -- your client's position and perspective for the hesitation of entering into a nondisclosure agreement regarding the settlement negotiations. And I guess we'll start from that perspective.

MR. MCKISSICK: Sure. Thank you, Your Honor.

THE COURT: And if you would, please stand.

MR. MCKISSICK: Sure.

THE COURT: Thank you, sir.

COURTROOM ADMINISTRATOR: Adjust the microphone, Mr. McKissick.

MR. MCKISSICK: Is that okay? Perfect.

Yeah. Thank you, Your Honor. I mean, we'd like to start by just saying that we're happy to be here.

As far as the demand for a nondisclosure agreement, at first our client was willing to consider that and we volunteered a proposed draft for that. But once it was being negotiated -- and to be clear, there was no agreement to enter into one. We simply agreed that we would confer with our client about that request. And we proposed an initial draft, but once it was edited by the other side, it became clear that that was going to be a very overbroad nondisclosure agreement which is why we eventually rejected the demand and just proposed that we enter into the Court's Local Rule 16-5 and enter the ADR process and will allow those confidentiality obligations to control the nature of the parties' settlement negotiations.

THE COURT: Okay. And so is the concern -- is your client 's concern basically regarding the broadness of the proposed NDA?

MR. MCKISSICK: The broadness of it and the ambiguity in some of the terms. It's a little bit of a -- it can be

tricky to determine what's in and outside of the bounds of that agreement. Whereas, of course, a settlement agreement for this trademark dispute would be much more cut and dry.

And of course, Your Honor, the defendant has been the party pushing for resolution of this case from day one, since before the complaint was filed, since before the answer was filed. My client has provided a draft settlement proposal to the other side. And we have been yet to hear anything on any of those proposals.

THE COURT: Does the -- does the settlement proposal that you've exchanged with the other side contain a confidentiality provision?

MR. MCKISSICK: No, it does not.

THE COURT: Okay. And if -- if the Court -- let me jump to that. If the Court were to entertain a settlement conference and -- and the parties would agree to a settlement conference at that -- or reach a settlement at that time, is -- would defendants be amenable to a confidentiality provision?

MR. MCKISSICK: Yes.

THE COURT: Okay. Because the local rule would not extend to what the terms would be of a settlement, and so you would have to negotiate that or agree to that between the parties. That's not something that would be covered by the --

MR. MCKISSICK: Yes, of course. We just -- we wanted to look to the Local Rule 16-5 as the, sort of, guidepost for

how that provision should look.

THE COURT: The provision for confidentiality?

MR. MCKISSICK: Yes.

THE COURT: For if you were to agree to the terms?

MR. MCKISSICK: Yes, as far as -- as far as being included in the settlement agreement.

THE COURT: Well, but that only covers the discussion. So it doesn't cover what you guys agree to.

MR. MCKISSICK: Yes. Yes, of course.

THE COURT: Okay. Because the -- and the reason is this -- it's -- I'll admit it's kind of odd. I haven't encountered a situation like this both on the bench and in private practice.

I admit I can see the plaintiff's position in terms of requiring a nondisclosure so that, you know, neither party goes to the media or to third parties to communicate terms of the settlement or what's being disclosed or what's being rejected because, you know, public perception here I understand with the trademark that's involved is something that is important considering the certifications that are at issue.

And so I'm just -- I'm -- I wanted to understand why there was a hesitation towards -- towards that sort of nondisclosure from your client 's perspective.

MR. MCKISSICK: It really had to do with the breadth --

THE COURT: Okay.

MR. MCKISSICK: -- of that agreement.

THE COURT: All right. Thank you, sir.

MR. MCKISSICK: You're welcome.

THE COURT: All right.

Mr. Moussavi.

MR. MOUSSAVI: Thank you, Your Honor.

So I'd like to I think clarify a little bit the -- sort of, what actually occurred here. We had an initial conversation with opposing counsel about potentially resolving this case. And our client had communicated to us that they didn't necessarily trust that Mr. Cameron of defendant would keep those communications private. Opposing counsel offered to draft the NDA. We never received an NDA that they proposed initially to draft.

Then we see our client gets an inquiry from a media member asking for comment on the story that was about this litigation. And Mr. Cameron had characterized certain things about our client in that media story that basically confirmed our concerns at the outset that -- the reason that we asked for those terms. And in that story Mr. Cameron expressly said that us wanting an NDA is problematic, right.

So what counsel's saying here about the breadth is actually not true. Now, it's true that they later then sent us a draft after some weeks or months. We sent in our view noncontroversial edits, and we never received anything back from

them. So this idea that it was just the breadth, we never even got to that point. They just ignored it once we sent them the draft.

So from our advantage point it seems like Mr. Cameron and his -- and BEPP seeks to weaponize anything that we offer them because defendant wants to litigate this in the media. It's all over social media. They're posting. They're going to reporters. And our client is just unwilling to engage in settlement discussions under those terms. We think this case -- it makes sense to discuss settlement, but we need to know that whatever we provide isn't going to be spun, then, sort of against our client in the media because our client is not going to litigate this case in the media.

THE COURT: All right. Thank you.

MR. MCKISSICK: In response, Your Honor, I would just like to mention that our client expressly rejected the demand at a certain point. Once it became clear that those negotiations were not going to go -- not going to be productive, we expressly rejected the demand for an nondisclosure agreement. So that was clear.

And the importance of those statements to the media is really unclear because opposing counsel has refused to engage in any conversations even before those statements were made. Again, we offered to resolve this dispute before the complaint was filed, heard nothing. They initiated the case. We

proposed -- we proposed to resolve the dispute after the complaint was filed, heard nothing once again.

THE COURT: I -- I understand that, but let's -- I mean, I want to get to the heart of the issue and I want to -- I'm not -- I don't feel like I'm getting a direct answer as to why is there a hesitation of entering a nondisclosure agreement so that any communications aren't going to be, you know, put up on -- the next day on social media or in reporter's news story or things of that nature.

I -- I can understand the plaintiff's concerns about communicating or agreeing to or anything else regarding the substance of a settlement agreement, but I'm not understanding the hesitation of a commitment from the defendants to make sure that whatever is exchanged either coming from your side or coming from their side is not going to end up on third-party posts or outside of the discussions between counsel or between the parties.

MR. MCKISSICK: Well, up until now it really has been distrust and the -- the scope of that nondisclosure agreement that was being discussed at the time. But we are willing now to make that representation that my client is going to commit to any obligations that, you know, the Court deems appropriate and in line with Local Rule 16-5.

THE COURT: Okay.

MR. MOUSSAVI: Just to, sort of, for the record I'd

like to read just a quote from the story -- direct quote from --

THE COURT: I -- I understand --

MR. MOUSSAVI: Right.

THE COURT: -- your perspective.

MR. MOUSSAVI: Okay.

THE COURT: I understand your perspective, but -- so Mr. McKissick is now representing to the Court that they're willing to consider a nondisclosure agreement, that their position is the -- you know, being governed under Local Rule 16.5.

MR. MOUSSAVI: So our concern with that is that that hasn't stopped defendant to this point. Now, if what defendant is saying is that they will actually agree to nondisclosure going forward in front of the Court, make that representation, I think that would be sufficient for our client to proceed, knowing that that representation has been made to the Court and the defendant understanding the gravity of, sort of, what that means. But up until now that hasn't stopped the defendant from constantly posting about this and --

THE COURT: I understand that.

MR. MOUSSAVI: Yeah. So --

THE COURT: There's been no agreement to that, and to that regard, I'm sure that this is an issue that is -- has taken some interest at least from third parties and that's why the coverage is being made. All right.

So if -- let me ask this because this would be something that I -- I would want resolved before going into a settlement conference, and that is that the parties agree that if the parties were to reach a settlement during our settlement conference that the -- aside from the discussions being governed by confidentiality, that the terms themselves would be confidential. Is that something that the parties can commit to an agreement now?

MR. MOUSSAVI: Yeah.

MR. MCKISSICK: Yes, Your Honor.

THE COURT: Okay.

MR. MOUSSAVI: I'm sure that our client would agree to that -- what you just -- what you just put forth, Your Honor. If what we're saying here is that we are solely being governed under the local rule and we have to effectively take it on their word that they won't breach that with really no recourse, I'll have to speak to my client about whether that's sufficient for them to want to engage. Because they -- what, quite frankly, they don't -- they don't trust Mr. Cameron, and I can't make that representation.

THE COURT: I -- I understand that, but, I mean, the difficulty from my part is if there's no -- if there's no trust now, my concern is wasting your time, wasting your time, and wasting my time in a settlement conference where I don't know how to breach that trust and get -- get past it. My -- here's

what I'm thinking is.

My thinking is I would -- if -- based upon your representations, I would intend to issue an order scheduling the settlement conference. That order's my standard order. It would require you to submit confidential briefs to me. I would add two provisions to that order. One provision is confirming that any discussions would be governed by Local Rule 16.5 regarding the briefs and everything else, and I would make that an order. And, therefore, if there is a breach of that, it would be a violation of my order subject to a contempt or Rule 16 sanctions.

And number two is that the -- the parties -- if they were to come to a settlement agreement during the settlement conference, then there would be a confidentiality provision that would include the language, and it would be something to the effect of: The parties agree that any terms -- that the settlement terms would be -- are confidential and that the parties can only disclose publicly that they came into an amicable resolution to their dispute.

Is that something that the parties are agreeable to?

MR. MCKISSICK: Yes, Your Honor.

THE COURT: All right.

MR. MOUSSAVI: I believe so, yeah. Plaintiff will.

THE COURT: All right. So the next question then is what is the parties' availability for -- for a settlement

conference. I'm looking at about a month out, and I'd like to just get a couple of dates for you. And then I'll issue -- I'll issue my order.

MR. MOUSSAVI: So in -- in October, are we talking?

THE COURT: Yeah, October or early November. That would be fine. Your clients need to have --

MR. MOUSSAVI: Yeah.

THE COURT: -- a representative present that has full authority without any limitations or otherwise to settle the matter.

MR. MOUSSAVI: I know just for me personally the week of the -- October 6th will be hard to do. I have conflict with another case. Other than that, I think I have availability, but I'll need to check with my client and -- yeah. So maybe some -- sometime in late October.

THE COURT: Okay. What about -- all right. So here's what I'll do. I'm just going to issue an order. We'll schedule this for sometime in October or November. If there's a -- if there's an -- and I'll schedule it far enough so that you guys can meet with your clients and schedule that. If there is an issue regarding that, then just submit a stipulation and give me at least three --

MR. MOUSSAVI: Okay.

THE COURT: -- alternative dates. Does that work for you guys?

MR. MOUSSAVI: Yes.

MR. MCKISSICK: That works.

MR. MOUSSAVI: Are they -- I guess --

THE COURT: All right. So my intention then is I'm going to enter a -- I'm going to grant your joint request for referral to a settlement conference, and that is your amended stipulation at ECF Number 25. And then I'm going to be issuing a separate scheduling order, and I'll include those two provisions that -- that any communications regarding this process, of the contents of your settlement briefs, and that our discussions are going to be governed by Local Rule 16.5. And the parties agree that if a settlement is reached at the settlement conference that the terms of the settlement are going to be confidential.

Is that clear?

MR. MOUSSAVI: Yes. Thank you.

MR. MCKISSICK: Yes, Your Honor.

THE COURT: All right. Is there anything further?

MR. MCKISSICK: Not from us.

THE COURT: All right.

MR. MOUSSAVI: Not from us. Thank you.

THE COURT: Thank you. We're adjourned.

(Whereupon the proceedings concluded at 9:20 p.m.)

--oOo--

I, Patricia L. Ganci, court-approved transcriber, certify that the foregoing is a correct transcript transcribed from the official electronic sound recording of the proceedings in the above-entitled matter.

/s/ PATRICIA L. GANCI
Patricia L. Ganci

SEPTEMBER 9, 2025
Date