SNELL & WILMER L.L.P.
Patrick G. Byrne (SBN 7636)
Erin M. Gettel (SBN 13877)
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135-1865
pbyrne@swlaw.com
egettel@swlaw.com

THOMPSON COBURN LLP
Michael A. Parks, IL 6217230 (*Pro Hac Vice*)
Sartouk H. Moussavi, IL 6313554 (*Pro Hac Vice*)
55 East Monroe Street, 37th Floor
Chicago, IL 60603
P: (312) 346-7500; F: (312) 580-2201
mparks@thompsoncoburn.com
smoussavi@thompsoncoburn.com

*Attorneys for Plaintiff ASIS International, Inc.*

SNELL & WILMER

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| ASIS INTERNATIONAL, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>BOARD OF EXECUTIVE PROTECTION PROFESSIONALS, INC.,<br><br>Defendant. | Case No. 2:25-cv-00287-RFB-MDC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS** |

Plaintiff ASIS International, Inc. ("ASIS"), by and through its undersigned counsel, respectfully submits this Opposition to Defendant Board of Executive Protection Professionals, Inc.'s ("BEPP") Motion for Attorneys' Fees and Costs (ECF No. 38) and states as follows:

/ / /

/ / /

/ / /

/ / /

/ / /

SNELL & WILMER

## I. INTRODUCTION

BEPP's Motion asks this Court to sanction ASIS's counsel under 28 U.S.C. § 1927 for prosecuting a trademark infringement case that resulted in judgment in ASIS's favor. The Court entered the Stipulation and Agreement for Permanent Injunction on April 6, 2026, and entered judgment "in favor of Plaintiff, ASIS International, Inc., and against Defendant, Board of Executive Protection Professionals, Inc." on April 7, 2026. Under that Stipulation, BEPP acknowledged and stipulated that ASIS owns valid and enforceable rights in the ASIS CPP Marks, permanently and irrevocably agreed not to use the Accused Marks, agreed to abandon all trademark applications, and agreed to remove past references to the Accused Marks from its websites, social media, and marketing materials.

Yet BEPP now asks this Court to conclude that the prevailing party's counsel acted "unreasonably and vexatiously" in prosecuting claims that yielded the very permanent injunction BEPP agreed to. BEPP's motion is without merit and should be denied in its entirety. Indeed, the filing of BEPP's motion is itself an example of the type of vexatious litigation conduct that has characterized BEPP's behavior throughout this case, and it further supports ASIS's own pending Motion for Recovery of Its Attorneys' Fees (ECF No. 40).[1]

## II. FACTUAL BACKGROUND

The timeline of events underscores the absurdity of *BEPP*—the party that willfully and repeatedly infringed ASIS's incontestable trademarks, unreasonably delayed resolution of this case through erratic and contradictory conduct, ultimately agreed to a permanent injunction acknowledging ASIS's rights, and had judgment entered against it—filing a motion for attorneys' fees against *ASIS,* the prevailing party whose only offenses were enforcing its trademarks and insisting that settlement communications remain confidential.

### *A. ASIS's Longstanding, Incontestable Trademark Rights*

ASIS is a globally recognized, nonprofit organization dedicated to advancing the field of security management. ECF No. 1, ¶ 11. Founded in 1955, ASIS provides resources, education,

[1] As an aside, BEPP's counsel inexplicably spent *from May 21, 2025 to present* an additional *fifty percent* over ASIS's fees incurred during the entire life of this matter (from October 2024 to present).

certifications, and networking opportunities for security professionals worldwide. *Id.*, ¶ 12. Since at least 1977, ASIS has offered its "Certified Protection Professional" and "CPP" certifications, which are recognized throughout the United States and globally as marks of excellence in security management. *Id.*, ¶ 21. ASIS owns multiple federal trademark registrations for the ASIS CPP Marks, all of which are incontestable under 15 U.S.C. § 1065. *Id.*, ¶¶ 26-30.

### *B. BEPP's Initial Infringement and Agreement to Stop—2022*

In 2022, after being a longtime ASIS-authorized "Certified Protection Professional"® who often displayed his "CPP" ® credentials to the public, James Cameron, through his newly organized company, BEPP, decided to adopt marks—"Certified Executive Protection Professional" and "CEPP"—nearly identical to ASIS's incontestable trademarks for identical services. Making the intentional copying even more unmistakable, BEPP's 2022 trademark application for "Certified Executive Protection Professional" was nearly a verbatim copy of ASIS's trademark registration for "Certified Protection Professional"—the mark ASIS began using in 1978.

On February 10, 2022, ASIS sent a cease-and-desist letter addressed to Mr. Cameron notifying BEPP of its infringement and demanding that BEPP cease all use and promotion of the infringing marks. *Id.*, ¶¶ 34-35. Mr. Cameron responded by stating that the infringing references had been "removed from the website." *Id.*, ¶ 36. BEPP also abandoned its application for "Certified Executive Protection Professional." *Id.*, ¶ 44.

### *C. BEPP's Willful Resumption of Infringement—2024*

Despite having acknowledged ASIS's trademark rights and having agreed to cease its infringement, BEPP inexplicably resumed the same infringing conduct in 2024. *Id.*, ¶ 45. BEPP not only began once again using the same exact infringing "Certified Executive Protection Professional" mark, but also filed a new trademark application for the same mark it had previously abandoned (Serial No. 98600516), and even applied for other infringing marks such as "Executive Protection Professional" and "Close Protection Professional." *Id.*, ¶¶ 45, 52. On September 13, 2024, ASIS sent a second cease-and-desist letter to BEPP. *Id.*, ¶ 46. Rather than cease its infringement, BEPP disputed ASIS's trademark rights and offered a so-called "amicable" offer that



SNELL & WILMER

BEPP would not pursue its newly-filed trademark application in exchange for ASIS agreeing to allow BEPP to infringe its "Certified Protection Professional" and "CPP" marks.

Given BEPP's brazen reversal and its demand that ASIS consent to BEPP's infringement of ASIS's registered trademarks, ASIS was left with no choice but to file the present suit, both to protect its incontestable trademarks and to protect the public who has come to associate ASIS's "CPP" and "Certified Protection Professional" marks with the standards that ASIS has spent decades establishing.

***D. BEPP's False Claims About What It Had Previously Proposed***

BEPP's Motion largely hinges on its representation that what BEPP agreed to in the Stipulation "mirrored the Confidential Settlement Agreement proposed by BEPP seven months earlier" and that "BEPP offered to abandon the Accused Marks ... before the Complaint was filed, after the Complaint was filed, and multiple times throughout the course of this case." *See, e.g.* ECF No. 38 at 11. This is unequivocally false, and it is odd that BEPP and its counsel would make this false claim, given that it was BEPP's current counsel (Lindsey McDougall of Brownstein Hyatt Farber Schreck, LLP) that sent the letter with the so-called "offer" on October 22, 2024 (*see* ECF No. 38-6).

First, in that letter, contrary to the attempt to deflect blame to "Trademark Eaze" for apparent admissions that BEPP made misrepresentations about its use of the Accused Marks in commerce, Ms. McDougall (who is on the signature block of BEPP's Motion) expressly represents that BEPP was already using and sought to "continue[] use" of the infringing "CERTIFIED EXECUTIVE PROTECTION PROFESSIONAL" mark. Further, BEPP's "offer" sought consent from ASIS to allow BEPP to continue to infringe ASIS's CERTIFIED PROTECTION PROFESSIONAL ***and*** CPP trademarks. BEPP's Motion rests on a material misrepresentation of the facts.

> in exploring possible resolution. To that end, BEPP is willing expressly abandon the pending federal trademark application for CERTIFIED EXECUTIVE PROTECTION PROFESSIONAL (Ser. No. 98/600,516) provided that ASIS (i) refrains from interfering and/or objecting to BEPP's continued use of CERTIFIED EXECUTIVE PROTECTION PROFESSIONAL in the marketplace, and (ii) consents to BEPP's use and registration of the trademarks CEPP and CEP² in both standard character and design formats. For reference, below is the CEP² logo design currently

SNELL & WILMER

*E. BEPP's Erratic and Improper Conduct Unnecessarily Delayed Resolution*

As detailed in ASIS's own motion for attorney fees and described below, BEPP's litigation conduct mirrored its pre-litigation conduct. BEPP says one thing—that it will stop infringing, draft and enter an NDA to engage in meaningful settlement discussions, acknowledge ASIS's incontestable trademarks and agree to a permanent injunction—but then does another: resuming infringing, refusing to enter an NDA, and now claiming that it is entitled to attorneys' fees due to so-called "unreasonable" and "vexatious" litigation conduct *by ASIS*.

Not long after the case was filed on February 12, 2025, ASIS indicated a willingness to settle, which was communicated by its counsel to BEPP's counsel on a conference call on March 31, 2025. During a subsequent call to discuss settlement on April 21, counsel for ASIS informed counsel for BEPP that, given recent social media posts by Cameron and his associates disparaging ASIS relating to this lawsuit, ASIS would need assurance that settlement communications would remain confidential. On that call, counsel for BEPP volunteered to draft an NDA. Ex. A at 15-16.[2] While BEPP's counsel was supposedly drafting an NDA, Cameron was further disparaging ASIS and leaking settlement communications to an industry publication. This confirmed for ASIS that any settlement communications must be accompanied by an NDA. *Id.* On May 7, 2025, BEPP's counsel did an about-face, stating that BEPP "has rejected a non-disclosure agreement for settlement discussions." *Id.* at 15. Two weeks later, on May 21, 2025, BEPP sent an unsolicited proposed settlement agreement—as though none of this had occurred. *Id.* at 14. That is the very agreement on which BEPP now bases its fee motion. The following day, ASIS responded that it was "open to an amicable resolution of this matter" but would "only entertain settlement discussions with BEPP after the parties enter a non-disclosure agreement." *Id.* at 13.

On May 27, 2025, BEPP reversed course yet again and sent a draft NDA. *Id.* ASIS provided edits two days later. *Id.* at 12. ASIS then followed up on June 5 and June 12 without response. *Id.* at 11-12. When BEPP finally responded on June 20—over three weeks later—it abandoned the NDA it had drafted, proposing instead to adopt the confidentiality provisions of Local Rule 16-5.

[2] Where practicable, for the Court's ease of reference, ASIS has highlighted in green relevant text in exhibits.

SNELL & WILMER

*Id.* at 11. ASIS asked why BEPP was refusing to sign its own NDA. *Id.* BEPP ignored the question. *Id.* at 10. On June 30, ASIS summarized the pattern: BEPP had been "agreeable to the concept of an NDA" had "drafted the NDA," and ASIS had "provided non-controversial edits," but now BEPP was "backtracking on entering into the NDA that you drafted, and we'd like to know why." *Id.* at 9-10.

BEPP responded on July 2, 2025, but continued to ignore ASIS's questions about the NDA. *Id.* at 8-9. On July 22, ASIS proposed proceeding with a settlement conference before Judge Couvillier, explaining it "would better address the concerns over confidentiality." *Id.* at 7.

The following week, the parties filed a joint request for referral for early settlement conference and a stipulation to stay the case. ECF Nos. 21-22. At the September 8, 2025, hearing on the parties' request for referral for early settlement conference, Judge Couvillier stated that he understood ASIS's "position in terms of requiring a nondisclosure so that [] neither party goes to the media or to third parties to communicate terms of the settlement or what's being disclosed or what's being rejected," that he was "not understanding the hesitation of a commitment from the defendants" to not disclose settlement communications, and that he "ha[d]n't encountered a situation like this both on the bench and in private practice." ECF No. 28, 6:11-17; 9:12-13. Accordingly, in issuing an order for a settlement conference, Judge Couvillier ordered that settlement discussions remain confidential and that failing to do so may result in contempt or other sanctions. ECF No. 29 Order, ¶ 4. In other words, Judge Couvillier appreciated and accepted ASIS's concerns that meaningful settlement discussions could not take place absent confidentiality.

A settlement conference was held on October 23, 2025, but was unsuccessful. Five days later (October 28), ASIS proposed the parties "resolve the merits portion of this case by jointly entering a stipulation of infringement and cessation of use by BEPP," and attached a draft stipulation. Ex. B. On November 4, BEPP provided a redline to ASIS's proposed Stipulation, and inexplicably included a threat to seek sanctions if ASIS "insist[ed] on pursuing this litigation" even though ASIS was the party who drafted the Stipulation that would resolve the merits. Ex. C at 5. After another round of edits, on Friday, November 21, BEPP responded to ASIS's latest edits with comments and redlines to the draft Stipulation. *Id.* at 3. The next business day (Monday, November





SNELL & WILMER

24), ASIS responded with a revised draft addressing almost all of BEPP's changes. *Id*. ASIS followed up again on December 2, 3, and 8 without hearing back. *Id.* at 1-3. BEPP finally responded on December 9, disingenuously questioning why ASIS had purportedly "not responded to [BEPP's] comments about why certain items have been taken out of the stipulation." Ex. D at 3-4. ASIS responded that same day with a chart showing how each of BEPP's comments/edits had been addressed in its November 24 draft. *Id.* at 1-2.

As ASIS explained, BEPP was "attempting to create issues where none exist," and the episode was "eerily similar to when you eventually sent us the draft NDA you volunteered to prepare, we responded with uncontroversial edits, and then we did not hear back from you for a period of time, only to later learn that your client was unwilling to sign the NDA (which, as you know, Judge Couvillier also did not understand)." *Id.* To show that ASIS was always willing to resolve this matter, and that ASIS's November 24 changes to BEPP's November 21 draft were substantially immaterial, ASIS went back and accepted BEPP's November 21 draft of the stipulation in order to resolve the merits portion of this case, signed it, and provided it to BEPP. *Id.*. The next day, December 10, 2025, the parties jointly filed the stipulation, which the Court entered on April 6, 2026. On April 7, 2026, the Court entered judgment in favor of ASIS and against BEPP. On April 20, 2026, BEPP filed a motion for its attorneys' fees and costs under 28 U.S.C. § 1927.

## III. LEGAL STANDARD

Section 1927 of Title 28, United States Code, provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." To impose sanctions under § 1927, the court must find that the attorney acted recklessly or in bad faith. *Schutts v. Bentley Nevada Corp.*, 966 F. Supp. 1549, 1558–59 (D. Nev. 1997). "Bad faith is present whenever an attorney knowingly or recklessly raises a frivolous argument, or makes a meritorious argument or claim for the purpose of harassing an opponent." *Id.* at 1559.





SNELL & WILMER

Section 1927 sanctions are reserved for the most egregious attorney conduct—they are not a vehicle for the losing party to punish the prevailing party's counsel for vigorously prosecuting meritorious claims. The Ninth Circuit has recognized that § 1927 may "shift the entire financial burden of an action's defense" only where "the entire course of proceedings was unwarranted and should not have been commenced or pursued." *Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 631–32 (9th Cir. 2017).

Importantly, both the history—from BEPP's initial infringement, applications, and cessation in 2022 to their reversal in 2024, to the tortured NDA negotiations, and the stipulation of infringement and cessation—and the procedural posture of this case underscore the baselessness of BEPP's motion. ASIS is the prevailing party: the Court entered a stipulated permanent injunction and judgment in ASIS's favor—the type of "judicially sanctioned change in the legal relationship of the parties" that confers prevailing-party status. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001). BEPP, the non-prevailing party against whom judgment was entered, now seeks to sanction the prevailing party's counsel under § 1927 for prosecuting the very claims that resulted in that judgment. Section 1927 was designed to deter attorneys from unreasonably multiplying proceedings, not to penalize counsel for successfully vindicating a client's rights. It is BEPP—not ASIS—who unreasonably multiplied the proceedings after deciding to reengage in willful trademark infringement.

## IV. ARGUMENT

### *A. BEPP Cannot Establish § 1927 Sanctions Where ASIS's Claims Were Vindicated by a Court-Entered Injunction and Judgment*

Once again, BEPP has agreed to one thing and is now claiming another. A threshold flaw in BEPP's motion is that it cannot satisfy § 1927's demanding standard on this record. ASIS's counsel prosecuted claims that were vindicated: BEPP agreed to a permanent injunction in which it acknowledged and stipulated that ASIS owns valid and enforceable rights in the ASIS CPP Marks and permanently and irrevocably agreed not to use any of the Accused Marks. And the Court entered judgment in favor of ASIS and against BEPP. Those case-dispositive outcomes foreclose

SNELL & WILMER

SNELL & WILMER

BEPP's suggestion that ASIS's counsel acted recklessly or in bad faith by pursuing frivolous claims.

A party that genuinely believed—as BEPP now claims—that a plaintiff's marks were "highly descriptive, bordering on generic" and that it "was never liable under any claims asserted by ASIS" would not agree to a permanent injunction acknowledging the validity and enforceability of those very marks. BEPP cannot have it both ways: it cannot stipulate to ASIS's trademark rights and consent to a permanent injunction, and then turn around and claim that ASIS's prosecution of those rights was frivolous and vexatious.

ASIS's claims rested on incontestable federal trademark registrations dating back to the 1970's. BEPP's founder, James Cameron, was himself an ASIS member and CPP holder who adopted marks nearly identical to the ASIS CPP Marks for the same services, copying ASIS's goods and services descriptions nearly verbatim. After first acknowledging the infringement and agreeing to cease in 2022, BEPP resumed the very same conduct in 2024. Under no reasonable view of these facts could ASIS's prosecution of this case be characterized as frivolous, reckless, or vexatious.

***B. Section 1927 Applies Only to Attorneys—Not to Parties***

BEPP's motion is inconsistent in its target. At times the motion appears to seek sanctions against ASIS's counsel under § 1927, and at other times it conflates ASIS's counsel with ASIS itself. Section 1927 applies only to attorneys—it does not authorize sanctions against a party. *See Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 757 (1980). To the extent BEPP seeks attorneys' fees against ASIS as a party, § 1927 provides no basis for such relief.

***C. ASIS's Counsel Did Not Act in Bad Faith or Recklessly***

BEPP's motion does not—and cannot—identify any conduct by ASIS's counsel that even remotely could resemble the level of bad faith or recklessness required under § 1927. BEPP's arguments at most amount to bald assertions about ASIS's litigation strategy, which do not support § 1927 sanctions.

1. ASIS Was Justified in Filing Suit

BEPP repeatedly asserts that this case "never should have happened" because BEPP supposedly "never provided any goods or services in commerce under the accused trademarks" and

SNELL & WILMER

that it purportedly "agreed to what it offered before ASIS filed its Complaint." Both of these claims are false. Moreover, BEPP already once claimed it would stop infringing ASIS's trademarks in 2022—and then broke its word and resumed the very same infringement two years later. There is a material difference between an unenforceable voluntary promise from a party that has already broken its word and a court-ordered permanent injunction. *See Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986) ("[T]he reform of the defendant must be irrefutably demonstrated and total.").

Further, BEPP materially mischaracterizes its "offer" to resolve the suit in 2024. Indeed, BEPP's pre-suit "offer" was that ASIS must consent to BEPP's infringement of ASIS's marks, and, in the case of "CEPP," even to the registration of the infringing mark (*see* ECF No. 38-6; correspondence sent by BEPP's counsel of record in this case):

> in exploring possible resolution. To that end, BEPP is willing expressly abandon the pending federal trademark application for CERTIFIED EXECUTIVE PROTECTION PROFESSIONAL (Ser. No. 98/600,516) provided that ASIS (i) refrains from interfering and/or objecting to BEPP's continued use of CERTIFIED EXECUTIVE PROTECTION PROFESSIONAL in the marketplace, and (ii) consents to BEPP's use and registration of the trademarks CEPP and CEP$^2$ in both standard character and design formats. For reference, below is the CEP$^2$ logo design currently

Finally, the "offer" was not the equivalent of the Stipulation ultimately entered. BEPP's October 22, 2024 letter did not include an acknowledgment of ASIS's trademark rights, an agreement to a permanent and court-enforceable injunction, an obligation to abandon all pending trademark applications for all Accused Marks, or an obligation to remove past references from websites and marketing materials. It was entirely reasonable for ASIS to decline this so-called offer and file suit, and ASIS's counsel to represent ASIS in so doing.

2. BEPP May 2025 Settlement Proposal Did Not Afford ASIS Full Relief and Was <u>Properly Declined</u>

BEPP's Motion largely hinges on the false notion that ASIS's counsel "unreasonably and vexatiously multiplied the proceedings" because the Parties' joint stipulation supposedly "mirrored the Confidential Settlement Agreement proposed by BEPP seven months earlier." This argument is, at best, unavailing and misleading.

First, BEPP's characterization that ASIS "never acknowledged" the May 2025 proposal (ECF No. 38 at 12) is flatly contradicted by the record. The very next day—May 22, 2025—ASIS

responded directly to BEPP's counsel, expressly stating that "ASIS is open to an amicable resolution of this matter" but explaining that, "for the reasons stated on our last call and in [ASIS's counsel's] May 5 email below, ASIS will only entertain settlement discussions with BEPP after the parties enter a non-disclosure agreement." Ex. A at 13. ASIS's counsel even offered to prepare the NDA, "unless you want to send us a proposed draft as you indicated on our last call." *Id*. As ASIS's counsel explained in the May 5 email referenced in the May 22 response, ASIS had learned that Mr. Cameron "ha[d] been communicating with outside media about the settlement discussions, including even the fact that we wanted an NDA for the discussions"—"actually doing the very thing our client was concerned with." *Id.* at 15-16. BEPP's proposed settlement agreement, sent only two weeks after BEPP had formally "rejected a non-disclosure agreement for settlement discussions" on May 7, 2025, was sent into an environment where BEPP's own principal had demonstrated he would not respect the confidentiality of the settlement process. ASIS reasonably concluded that without an NDA it could not negotiate the terms of a confidential settlement with a party that was publicly mischaracterizing the matter.

What happened next further demonstrates that it was BEPP—not ASIS—that obstructed the settlement process. After receiving ASIS's May 22 email reiterating its NDA requirement, BEPP's counsel reversed course yet again and, on May 27, 2025, provided a draft NDA, stating: "Attached is a draft NDA. We look forward to hearing from you." *Id.* at 13. ASIS promptly responded with proposed comments to the NDA on May 29, 2025—just two days later. *Id.* at 12. Then, hearing nothing back from BEPP, ASIS followed up on June 5, 2025 and again on June 12, 2025, asking whether BEPP was "okay with our changes to the NDA, or if you have any comments." *Id.* at 11-12. It was not until June 20, 2025—over three weeks after ASIS provided its comments—that BEPP finally responded, and instead of addressing ASIS's proposed changes to the NDA that BEPP itself had drafted, BEPP's counsel abandoned the NDA entirely, stating: "Perhaps this is getting overly complicated. How about the parties just agree to the confidentiality required at judicial settlement conferences, expressed in Local Rule 16-5?" *Id.* at 11. The next day, June 21, ASIS asked: "Is your client refusing to sign the NDA you drafted (and we provided comments to)? If so, why?" *Id.* at 10-11. Rather than answer, BEPP responded on June 26 by simply asking: "Will ASIS agree to

SNELL & WILMER

adopt the local rule for confidentiality required at judicial settlement conferences for future discussions among the parties or not?" *Id.* at 10. On June 30, ASIS summarized the situation, reminding BEPP that it was BEPP who was "agreeable to the concept of an NDA," who "drafted the NDA," and to which ASIS "provided non-controversial edits," but that "[n]ow for some undisclosed reasons, your client appears to be backtracking on entering into the NDA that you drafted, and we'd like to know why." *Id.* at 9-10. BEPP never answered that question. This pattern—BEPP volunteering to draft an NDA, then rejecting an NDA, then providing an NDA, then abandoning the very NDA it drafted after ASIS promptly commented on it—is precisely the kind of erratic, say-one-thing-do-another conduct that delayed resolution. For BEPP to now argue that ASIS "refused to settle" is a blatant mischaracterization of the record.

Moreover, the May 2025 proposed settlement did not offer ASIS the same relief it ultimately obtained. Under the Stipulation and Agreement for Permanent Injunction entered by the Court, BEPP acknowledged and stipulated that ASIS owns valid and enforceable rights in the ASIS CPP Marks, permanently and irrevocably agreed not to use the Accused Marks, agreed to abandon all pending trademark applications, and agreed to remove past references from websites, social media, and marketing materials—all backed by the enforcement power of a federal court. ECF No. 36. BEPP's May 2025 proposal, by contrast, was a private contract with a 14-day cure period, no acknowledgment of ASIS's trademark rights, and no mechanism for judicial enforcement through contempt. ECF No. 38-9 (BEPP's proposed settlement agreement), §§ 1–2, 14. Indeed, the May 2025 proposal actually demanded affirmative concessions from ASIS: it required ASIS to consent to BEPP's use and registration of the so-called "BEPP-Marks" (defined as "BEPP-CP, BEPP-EP, or any other mark that features the term 'BEPP' immediately preceding any other acronym and separated by a hyphen") and to agree that it would "not oppose, challenge, or otherwise interfere with BEPP's registration and use of the BEPP-Marks in any way." ECF No. 38-9, § 3.

BEPP's reliance on *Kline v. Wolf*, 702 F.2d 400 (2d Cir. 1983), is misplaced and, indeed, undercuts BEPP's position. In *Kline*, the Second Circuit actually *vacated* a district court's forced settlement over the plaintiffs' objections, holding that "a court may not impose upon a plaintiff a settlement that deprives him of relief to which he could be entitled after trial" and that "the plaintiffs

SNELL & WILMER

should be free to prosecute their individual lawsuits." *Id.* at 405–06. The § 1927 language BEPP cites was not the holding of the case—it was dicta, in which the court merely observed that § 1927 *could potentially* apply if the plaintiffs' claims turned out to be "so lacking in merit that they have but a slender chance of success at trial" in light of the "defendants' earlier offer to pay plaintiffs' entire individual damages." *Id.* at 405. That dicta has no application here for at least three reasons. ASIS's claims were not "so lacking in merit" that they had "but a slender chance of success"—they were *fully vindicated* by the Court's entry of a permanent injunction and judgment in ASIS's favor. Unlike the defendants in *Kline* who offered to pay the plaintiffs' "entire individual damages,"

BEPP's May 2025 proposal did not offer ASIS complete relief: it contained no acknowledgment of ASIS's trademark rights, no court-enforceable injunction, only a private contract with a 14-day cure period, and it demanded that ASIS affirmatively consent to BEPP's use of additional marks. *Compare* ECF No. 36 (Stipulation and Agreement for Permanent Injunction), *with* ECF No. 38-9 (BEPP's proposed settlement agreement). And even if *Kline*'s dicta were applicable, it supports ASIS's position: the *Kline* court held that parties have a right to prosecute their claims to judgment rather than being forced to accept a settlement—precisely what ASIS did here. *See also Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986) ("[T]he reform of the defendant must be irrefutably demonstrated and total."). Given BEPP's demonstrated willingness to break its prior commitments, ASIS's insistence on obtaining a court-enforceable injunction was reasonable.

3. <u>BEPP—Not ASIS—Unreasonably Multiplied the Proceedings</u>

BEPP asserts that ASIS refused to engage in settlement discussions and thereby prolonged the litigation. This is belied by the record. As explained in detail in Sections II.D and IV.C.2, above, it was BEPP—not ASIS—that unreasonably multiplied the proceedings. Indeed, after ASIS filed suit, counsel for ASIS engaged with BEPP's counsel on April 21, 2025, to discuss settlement. ASIS's only request was that settlement discussions be governed by a non-disclosure agreement—a standard, reasonable request in any litigation, and one that was particularly appropriate given BEPP founder James Cameron's demonstrated proclivity to attack ASIS and others on social media. In fact, during that April 21 meeting, BEPP's counsel volunteered to draft the NDA. Ex. A at 15-





SNELL & WILMER

16. But then, as ASIS waited to receive the draft NDA promised by BEPP's counsel, ASIS learned that Cameron was leaking and attacking the parties' communications to the media and elsewhere. *Id.* The next several months were mired by BEPP's refusal to agree to keep settlement communications confidential, and its erratic, say-one-thing-then-do-another conduct.

The propriety of ASIS's position on confidentiality was confirmed by the Court itself. At the September 8, 2025 hearing, Magistrate Judge Couvillier stated that he understood ASIS's "position in terms of requiring a nondisclosure so that neither party goes to the media or to third parties to communicate terms of the settlement," that he was "not understanding the hesitation of a commitment from the defendants," and that he "ha[d]n't encountered a situation like this both on the bench and in private practice." Judge Couvillier then ordered that settlement discussions remain confidential, with the threat of contempt or sanctions for non-compliance.

It was BEPP—not ASIS—that complicated and delayed the settlement process by reneging on its agreement to draft an NDA, leaking settlement discussions to the press, and taking contradictory positions throughout the litigation.

4. <u>ASIS's Discovery Conduct Was Appropriate</u>

BEPP's complaint about ASIS's discovery conduct is similarly meritless. As a threshold matter, BEPP never filed a motion to compel, and no court ever found ASIS's discovery responses or production to be deficient. Section 1927 is not a vehicle for retroactively litigating discovery disputes that were never presented to or adjudicated by the Court. Sanctions under § 1927 and the court's inherent powers require an explicit finding of bad faith, which "sets a high threshold" and is "reserved for the 'rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose.'" *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648–50 (9th Cir. 1997) (quoting *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988)). BEPP's after-the-fact complaints about ASIS's discovery conduct—never raised with the Court during the discovery period—do not come close to meeting that threshold.

Moreover, BEPP's characterization of ASIS's discovery conduct ignores the context in which discovery took place. The parties agreed to stay the case in July 2025 and the case remained





SNELL & WILMER

stayed through late October 2025 for a settlement conference before Magistrate Judge Couvillier, during which the parties were focused on resolution rather than adversarial discovery. ECF No. 29. After the unsuccessful settlement conference, ASIS promptly reached out to BEPP on October 28, 2025, with a proposed stipulation to resolve the merits. The parties then exchanged edits to that stipulation in November through December 10, 2025, when they jointly filed the Stipulation and Agreement for Permanent Injunction. In other words, during the very period BEPP now complains about, the parties were actively negotiating the resolution that ultimately ended the case. ASIS's focus on resolution—rather than engaging in costly adversarial discovery in a case it was actively working to settle—was reasonable.

BEPP's argument that ASIS never disclosed a computation of damages or identified experts on damages and likelihood of confusion likewise misses the mark. ASIS's claims sought injunctive relief—specifically, a permanent injunction prohibiting BEPP from using the Accused Marks—which is precisely what ASIS obtained. ECF No. 36. Trademark infringement under the Lanham Act does not require proof of actual confusion or actual damages; the standard is *likelihood* of confusion. *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999) ("The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products."). There is nothing improper about ASIS's focus on injunctive relief rather than monetary damages. BEPP cannot manufacture a § 1927 violation out of ASIS's decision to focus its discovery efforts on injunctive relief.

BEPP's assertion that ASIS "did not conduct any third party discovery, and did not depose a single person" (ECF No. 38-1, ¶ 10) is not only a non sequitur, but also highly misleading. First, there is no rule requiring a plaintiff to conduct third-party discovery or take depositions, and the decision not to do so is a matter of litigation strategy, not evidence of bad faith.

Second, ASIS noticed Mr. Cameron's deposition on June 30, 2025—something curiously omitted from BEPP's Motion and its counsel's declaration, which state that "[o]n December 3, ASIS noticed its intent to depose Mr. Cameron on either December 12 or December 15, 2025." *See* ECF No. 38 at 10 and 38-1 at ¶ 8. As explained in ASIS's June 30 email, ASIS wanted "to resolve





SNELL & WILMER

this case amicably" but if it could not, "deadlines are approaching, and we need to move forward," and "[t]o that end, please find attached a deposition notice for James Cameron for August 1." Ex. A at 10. Once the parties agreed to attend the settlement conference on or around July 22, counsel for BEPP wrote that they "presume this means the deposition [of Cameron] noticed for August 1 will not take place." *Id.* at 7.

Further, after the case did not settle at the October 23 settlement conference and the stay was lifted, ASIS—on October 28—not only promptly provided the draft stipulation to address the merits portion of the case, but also stated in that email that "[i]f BEPP is not amenable [to a stipulation], please provide available dates in November for Mr. Cameron's deposition." Ex. B. As set forth above in more detail, the parties were negotiating the stipulation throughout November, when BEPP suddenly went silent on the stipulation (oddly, after all the material terms had effectively been agreed upon), causing ASIS to follow up on December 2, December 3, and December 8. *See* Ex. C.

In the December 3 email—the email that BEPP's Motion and Mr. McKissick's declaration erroneously treat as the first time ASIS sought Cameron's deposition—ASIS reminded BEPP's counsel that it had "previously noticed Mr. Cameron's deposition, but then later agreed to take it off the calendar 'for now' because the Parties had agreed to mediate the case before Judge Couvillier." *Id.* at 2. However, "[g]iven BEPP's silence on the Stipulation while at the same time proceeding with discovery activity, the only logical takeaway is that BEPP is not interested in resolving the merits portion of this case, despite what appears to have been hollow claims that it was." Accordingly, ASIS would "need to proceed with Mr. Cameron's deposition," and with discovery set to close on December 15, to let ASIS know "if he prefers December 12 or 15 for his deposition, as we will make either date work." *Id.* With no response to that email, ASIS reiterated that "if the merits portion of the case would not be resolved via the Stipulation [that] the parties had negotiated and were in agreement on in all material aspects, ASIS [would] need[] to take Mr. Cameron's deposition," and that "despite challenges of short notice travel from Chicago to Las Vegas" for ASIS's counsel, ASIS had given Mr. Cameron the choice of December 12 or 15. *Id.* at 1-2. But "[g]iven the lack of response to our numerous correspondences, including your complete

SNELL & WILMER

silence regarding the Stipulation after having negotiated it to the point of agreement on all material terms," ASIS asked BEPP to confirm that Cameron would be made available for his deposition after December 15 and that BEPP would agree that taking his deposition after December 15 is not improper under these circumstances. *Id.* On December 10, ASIS signed BEPP's November 21, 2025 draft, which the Parties filed that same day. Thus, BEPP's assertion that ASIS "not depos[ing] a single person" somehow evidences bad faith is baseless. Moreover, ASIS produced documents during the discovery period. *See* ECF No. 38-1 at ¶ 8. That the production consisted largely of USPTO records is unsurprising—the case concerned trademark applications, and USPTO records were central to the claims. In sum, nothing about ASIS's discovery conduct supports a finding that ASIS's counsel acted recklessly or in bad faith.

5. ASIS's Assertion of Exceptional Case Status Was Reasonable

BEPP argues that ASIS unreasonably multiplied the proceedings by asserting from the outset that this is an exceptional case under 15 U.S.C. § 1117. But the Lanham Act expressly authorizes the prevailing party to seek attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a). Given BEPP's pattern of willful infringement—acknowledging the infringement, agreeing to stop, and then resuming the identical conduct—ASIS's position that this case is exceptional is well supported by Ninth Circuit authority. *See Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1218 (9th Cir. 2003) (affirming exceptional case finding where defendant reneged on agreement to cease infringement); *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1223 (9th Cir. 2023) (affirming exceptional case finding for willful infringement). There was nothing unreasonable about asserting this position.

***D. BEPP's Motion Is Internally Contradictory and Legally Untenable***

BEPP's motion is riddled with contradictions. On the one hand, BEPP stipulated that ASIS owns valid and enforceable rights in the ASIS CPP Marks, permanently agreed not to use any of the Accused Marks, and agreed to abandon its trademark applications. ECF No. 36. On the other hand, BEPP now claims it "was never liable under any claims asserted by ASIS" (ECF No. 38 at 2 n.1), that the ASIS CPP Marks are "highly descriptive, bordering on generic" (ECF No. 38 at 14), and that this case "never should have happened" (ECF No. 38 at 2). A party that truly believed





SNELL & WILMER

these assertions would not have agreed to a permanent injunction acknowledging the enforceability of those marks. BEPP's post-judgment conduct mirrors the pattern it followed throughout this entire dispute: say one thing, do another.

***E. BEPP's Motion Is Itself Frivolous and Supports an Award of Additional Fees to ASIS***

BEPP's filing of a motion for attorneys' fees against the prevailing party—under a statute that penalizes vexatious litigation conduct—after having stipulated to a permanent injunction acknowledging the validity and enforceability of ASIS's marks is itself frivolous, especially in view of BEPP's repeated reversals in position, improper leaking of settlement communications, and unreasonable refusal to agree to keep settlement communications confidential throughout this litigation. In fact, forcing ASIS to incur additional legal fees responding to this baseless motion is yet another example of the unreasonable conduct that has characterized BEPP's behavior throughout this case. *See Recouvreur v. Carreon*, 940 F.Supp.2d 1063, 1069 (N.D. Cal. 2013) (finding case "exceptional" where defendant's "unnecessary, vexatious, and costly tactics" during the litigation transformed the case into one meriting a fee award).

Section 1927 sanctions are reserved for counsel who "unreasonably and vexatiously" multiply proceedings. Here, ASIS filed suit only after BEPP resumed the very infringement it had previously agreed to stop. BEPP's erratic negotiations and unreasonable refusal to keep settlement communications confidential needlessly prolonged the litigation. And ultimately the Court entered judgment in favor of ASIS and against BEPP. Yet BEPP now asks this Court to sanction ASIS's counsel for successfully enforcing ASIS's incontestable trademark rights—a position that turns § 1927 on its head.

The Ninth Circuit has held that § 1927 "also allows for an award of fees-on-fees." *Blixseth*, 854 F.3d at 631–32; *see also Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1297–1302 (11th Cir. 2010) (concluding that "the costs of obtaining sanctions may be included in a sanctions award under § 1927"). By the same logic, fees incurred in opposing a frivolous sanctions motion are recoverable. ASIS respectfully submits that the fees it has incurred in opposing BEPP's baseless motion should be considered by the Court. BEPP's filing of this frivolous motion further supports a finding this case is "exceptional" under 15 U.S.C. § 1117(a), as it demonstrates the continuing pattern of

SNELL & WILMER

unreasonable conduct that has characterized BEPP's behavior from the outset of this dispute.

## V. **CONCLUSION**

For all of the foregoing reasons, ASIS respectfully requests that this Court deny BEPP's Motion for Attorneys' Fees and Costs in its entirety. BEPP has failed to identify any conduct by ASIS's counsel that was unreasonable, vexatious, reckless, or in bad faith. To the contrary, ASIS's counsel prosecuted meritorious claims that resulted in judgment in ASIS's favor and a permanent injunction that BEPP itself agreed to. BEPP's motion is without merit and should be denied with prejudice. ASIS further respectfully requests that the Court consider the additional fees ASIS has been required to incur in opposing BEPP's baseless motion, and grant such other and further relief as the Court deems just and proper.

DATED: May 4, 2026

By: *<u>/s/ Erin M. Gettel</u>*

SNELL & WILMER L.L.P.
Patrick G. Byrne (SBN 7636)
Erin M. Gettel (SBN 13877)
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135-1865
pbyrne@swlaw.com
egettel@swlaw.com

THOMPSON COBURN LLP
Michael A. Parks, IL 6217230 (*Pro Hac Vice*)
Sartouk H. Moussavi, IL 6313554 (*Pro Hac Vice*)
55 East Monroe Street, 37th Floor
Chicago, IL 60603
P: (312) 346-7500; F: (312) 580-2201
mparks@thompsoncoburn.com
smoussavi@thompsoncoburn.com

*Attorneys for Plaintiff ASIS International, Inc.*

SNELL & WILMER

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2026, I electronically transmitted the foregoing **PLAINTIFF ASIS INTERNATIONAL, INC.'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

*/s/ Jennifer Gunther*
An employee of Snell & Wilmer L.L.P.

SNELL & WILMER